AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

```
FILED

Jan 18, 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
```

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

12801 Fair Oaks Blvd, #523,
Citrus Heights, California 95610

)
)
)
)
)
)

Case No.    2:22-sw-0035 AC

# SEALED

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-1.

located in the _____EASTERN_____ District of _____CALIFORNIA_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Substances; |
| 18 U.S.C. § 912 | Impersonation of a Federal Officer |

The application is based on these facts:

See Affidavit of Special Agent John Ogden

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ John Ogden
*Applicant's signature*

_____
John Ogden, FBI Special Agent
*Printed name and title*

Sworn to before me telephonically.

Date:    _____01/18/2022_____

City and state:  Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

### Affidavit of FBI Special Agent John Ogden

I, John Ogden, being duly sworn, hereby depose and state:

### PURPOSE

1. This Affidavit is made in support of a search warrants for:

   a. 12801 Fair Oaks Blvd, #523, Citrus Heights, California 95610 (hereinafter, the "Target Residence"), as described in Attachment A-1

   b. The person of Dominique Hodge (hereinafter, "Hodge"), as described in Attachment A-2

   c. A 2016 Nissan Maxima bearing California license plate 8WBK243 (hereinafter, the "Target Vehicle"), as described in Attachment A-3

   I assert that there is probable cause to believe that the locations described above contains evidence of a criminal violation of 18 U.S.C. § 912, impersonation of a federal officer, and 21 U.S.C. §§ 846, 841(a)(1), conspiracy to distribute a controlled substance.

### AGENT BACKGROUND

2. I am a Special Agent with the Federal Bureau of Investigation, and have been since February 2009.  I am currently assigned to the Sacramento Division of the FBI, where I investigate various federal crimes.  During the course of my career as an FBI Special Agent, I have been the affiant on at least thirty federal search warrants.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested search warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.  This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation.

///
///
///

## STATEMENT OF PROBABLE CAUSE

***Dominique Hodge arrested after trying to carry marijuana onto an airplane.***

4. On May 22, 2021, Dominique Devian Hodge attempted to board a JSX Airline flight from Reno to Las Vegas.  Airline personnel asked Hodge about her luggage and her responses gave airline personnel reason to believe that Hodge was attempting to hide something in her luggage.  Airline personnel looked in Hodge's luggage and observed what appeared to be marijuana.  Airline personnel then called airport police.

5. While waiting for airport police, a JSX employee received a telephone call from someone who identified herself as "Kim", but later identified herself as "Sabrina", and claimed to be from the JSX head office.  "Kim"/"Sabrina" told JSX employees that she needed Hodge to continue on the flight to Las Vegas.  "Kim"/"Sabrina" said that there was a confidential top-secret investigation into Hodge and Las Vegas Police were waiting to arrest Hodge in Las Vegas.  According to JSX airline personnel the call from "Kim"/"Sabrina" came from phone number 800-435-9579.

   a. According to the JSX company website, phone number 800-435-9579 is listed as the contact number for JSX customer service.

   b. Based on my investigation in this case, which has involved multiple impersonation attempts by a person named Myra Minks, I believe that Myra Minks called JSX employees and used the name "Kim"/"Sabrina." Further, I believe that Minks used technology to make it appear she was calling from a JSX phone number and that she likely looked up the JSX customer service phone number online.  I believe that Minks impersonated a JSX employee to help Hodge avoid contact with law enforcement.

6. Law enforcement officers from the Reno-Tahoe Airport Authority Police Department arrived and contacted Hodge.  Hodge gave consent to search her luggage.  Law enforcement officers opened her luggage and found as large number of plastic bags that were professionally labeled as "Bubba Kush."  In total, law enforcement officers seized 67 individual bags of marijuana that contained approximately 75 pounds of marijuana in total.

7. Hodge was arrested and charged with possession of a controlled substance, possession of a controlled substance for sale, and trafficking in a controlled substance.  Hodge's cellular telephone was seized incident to arrest.

*Hodge is part of a larger drug trafficking organization.*

8.   On June 21, 2021, the Honorable Carolyn K. Delaney authorized a federal search
     warrant for Myra Minks's 2021 Mercedes coupe (2:21-SW-0525-CKD, Exhibit 1).
     This search warrant is attached and incorporated by reference.

9.   During the execution of the above-referenced search warrant, law enforcement
     officers seized and searched an Apple iPhone belonging to Minks that was
     assigned FBI evidence item 1B38 and another Apple iPhone assigned FBI evidence
     item 1B39.  Several text messages on 1B39 indicate that Hodge and Minks were
     working together.

   a.   On May 22, 2021, Minks sent a text that said, "I just left Vegas.  The girl
        was supposed to come today. Use jsx, you know that airline: but she left
        from Reno and she's a black girl so they hit her."

   b.   Another text message sent from Minks's phone to a suspected marijuana
        supplier on May 22, 2021, read, "Jason It's been a long time that I take
        airport Lately I send in a box in a crate.  Takes 2-3 days to get there.  Today
        she pack because she bring on plane. She go to jail.  I loose every dollar.
        Any way you can send 100 and you make $17500-$1850 Off each one? My
        transportation with the fright [freight] is ok".

   c.   On May 24, 2021, Minks sent a text message that said, "I lose 240 k and girl
        go to jail."  A booking photo of a black female was sent via text.  "Look how
        she look."

10.  I recognized the black female in the booking photo as Dominique Hodge.  I had
     recently seen a photo of Hodge on a counterfeit Texas driver's license in Minks's
     possession on June 22, 2021.  Subsequently, the cell phone seized from Hodge was
     transferred to FBI custody on July 20, 2021 in Reno, NV and was transferred to
     the FBI Sacramento office on July 22, 2021.  The iPhone was booked as FBI
     evidence item 1B46 and was further described as an Apple iPhone, black and
     white in color.

11.  I reviewed a recording from cell phone 1B38 which was dated March 20, 2021.
     Hodge was arguing with Minks about the amount of money Minks paid her per
     trip.  Minks responded by saying that she paid Hodge $1,000 to $1,500 every week.
     Hodge disputed that she was paid every week.  Hodge reminded Minks that she
     (Minks) said that Q pays $1,500 a trip. I know from this investigation that Q is a

nickname for Quinten Moody, further mentioned in Exhibit 1.  Hodge told Minks that she (Hodge) was not a snitch.  Minks asked Hodge what she (Hodge) could say.  Minks didn't care if Hodge was bringing packs all across the whole United States.  No one put a gun to Hodge's head.  I know from my training and experience and through investigation of this case that packs refer to packages of marijuana.

### Search of Hodge's cell phone (1B46) seized on May 22, 2021

12. On July 29, 2021, the Honorable Jeremy D. Peterson authorized a federal search warrant for the iPhone (1B46) seized from Hodge on May 22, 2021 (2:21-SW-0621-JDP).  On the phone was a screenshot of a text message as follows:

> Hodge: Driving these packs to concord wby
> Much: Why.  Who There
> Hodge: The person that's gonna pack these into a crate
> Much: Oh I see
> Hodge: Yea it's for next trip to the D
> Much: Detroit who do she know out there

An image found on the phone depicted a large wooden crate with the top open and two large black duffel-style bags on the floor inside a closed garage.  The crate was similar is size, shape and construction to those I found on cell phones belonging to Minks.  In text messages Minks said such crates would be used to ship marijuana.  Further indicia that iPhone (1B46) belonged to Hodge was found which included bank transaction and package delivery screen shots depicting Hodge's name and selfie photos depicting Hodge's person.  Much of the phone has not yet been searched due password protection and encryption.

### Hodge currently resides at the Target Residence and uses the Target Vehicle

13. On January 7, 2022, a GPS ankle monitor was placed on Hodge by the Placer County Probation Department.  Hodge told Placer County Probation that she lived alone at the Target Residence.  She also said that she owns and drives the Target Vehicle.  FBI Agents observed Hodge driving the Target Vehicle away from the Placer County Probation Department.  Agents also observed Hodge exit the vehicle at her place of employment in Roseville, CA after which a male identified as Toby Anthony moved from the passenger seat to the driver seat and drove away.  I reviewed open-source records and found that both Hodge and Anthony have residence address history at the Target Residence.

14. On January 10, 2022, I observed a female matching the description of Hodge exit the driver side door of the Target Vehicle.  The Target Vehicle was parked in the parking lot of the Target Residence.  I observed Hodge walk away from the vehicle toward the Target Residence and out of view.

15. Placer County Probation confirmed that from January 10, 2022 to January 13, 2022, GPS ankle monitor data showed Hodge staying overnight in the vicinity of the Target Residence.  From January 7, 2022 to January 10, 2022, the ankle monitor was not functioning properly or reporting Hodge's location.

### **REQUEST TO SEAL**

16. This Affidavit and its attachments contain information regarding an ongoing criminal investigation, which if unsealed may jeopardize the very information sought to be gained by this search warrant. In light of the on-going nature of the investigation, the prior examples of false impersonation, and the likelihood that notice to Moody and Minks would likely cause them to flee from prosecution and destroy evidence of their criminal offenses, your Affiant requests that this Affidavit and the resulting Search Warrant be sealed on the Court's docketing system, with the exception of copies utilized by law enforcement officers participating in the investigation and a copy of the Search Warrant and an inventory of any items seized that will be left at the location of the execution of the Search Warrant.

///

///

///

///

///

///

///

///

///

///

///

## **CONCLUSION**

17. Based on the foregoing facts, I hereby request that the search warrant be issued for the locations identified in Attachment A-1, A-2, and A-3 for items identified in Attachment B.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_/s/ John Ogden_

JOHN OGDEN
FBI Special Agent

Sworn and Subscribed to me telephonically
on January 18, 2022,

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

JUSTIN L. LEE
Assistant United States Attorney

## ATTACHMENT A-1

### *Location to be Searched*






12801 Fair Oaks Blvd, #523, Citrus Heights, California 95610.  A second story unit in the Montage Apartments with the number "523" on the door.

## ATTACHMENT B

All records relating to violations of 18 U.S.C. § 912, False Impersonation of a Federal Agent, and 21 U.S.C. §§ 846 and 841(a), Conspiracy to Distribute a Controlled Substance, those violations involving Dominique Hodge, Myra Boleche Minks and/or Quinten Giovanni Moody, including:

1. Lists of drug customers and related identifying information.

2. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

3. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

4. Any communications between Hodge, Minks, and Moody.

5. All bank records, checks, credit card bills, account information, and other financial records.

6. Any photographs or video recordings depicting controlled substances and/or United States currency.

7. Cellular telephones.

8. Any information recording schedule or travel.

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

**Jun 21, 2021**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of

2021 Mercedes coupe with California license
plate number 8UHF914

)
)
)
)
)
)

Case No.   2:21-sw-0525 CKD

# SEALED

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A-6, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 912; 21 U.S.C. §§ 846 and 841(a)(1) | False Impersonation of a Federal Agent; Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/

*Applicant's signature*

John W. Ogden, FBI Special Agent

*Printed name and title*

Sworn to telephonically, pursuant to Fed. R. Crim. P. 4.1.

Date:   June 21, 2021 at 4:31 pm

*Judge's signature*

City and state:   Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge

*Printed name and title*

1  PHILLIP A. TALBERT
Acting United States Attorney
2  BRIAN A. FOGERTY
Assistant United States Attorney
3  501 I Street, Suite 10-100
Sacramento, CA 95814
4  Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

5

6

7  Attorneys for Plaintiff
United States of America
8

9            IN THE UNITED STATES DISTRICT COURT

10           EASTERN DISTRICT OF CALIFORNIA

11

12  In the Matter of the Search of:          CASE NO.

13  LOCATIONS IDENTIFIED IN               AFFIDAVIT IN SUPPORT OF AN APPLICATION
    ATTACHMENTS A-1 THROUGH A-6           UNDER RULE 41 FOR A WARRANT TO
14                                         SEARCH AND SEIZE

15

16

17      I, John W. Ogden, being first duly sworn, hereby depose and state as follows:

18              **I.        INTRODUCTION AND AGENT BACKGROUND**

19      1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of

20  Criminal Procedure for warrants to search the premises identified in Attachments A-1 through A-6 and

21  below for the things described in Attachment B:

22              a.  5113 Glenwood Springs Way, Roseville, California (hereinafter, the

23                  "Glenwood Springs Way Residence"), further identified in

24                  Attachment A-1;

25              b.  Myra Boleche MINKS (hereinafter, "MINKS"), further identified in

26                  Attachment A-2;

27              c.  Quinten Giovanni MOODY (hereinafter, "MOODY"), further identified in

28                  Attachment A-3;

AFFIDAVIT                          1

d.  2019 Range Rover with California license plate number 8HKR537 (hereinafter, the "Range Rover"), further identified in Attachment A-4;

e.  2020 Lexus sedan with California license plate number 8NVF834 (hereinafter, the "Lexus"), further identified in Attachment A-5; and

f.  2021 Mercedes coupe with California license plate number 8UHF914 (hereinafter, the "Mercedes"), further identified in Attachment A-6.

2.  I am a Special Agent with the Federal Bureau of Investigation, and have been since 2009. I am currently assigned to the Sacramento Division, where I primarily investigate fugitive and violent crime matters. Through the course of my career as an FBI Special Agent, I have received training and gained field experience analyzing cellular telephone data, to include location data, to further criminal investigations. I am a federal law enforcement officer authorized to request a search warrant.

3.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 912, False Impersonation of a Federal Agent, and 21 U.S.C. §§ 846 and 841(a)(1), Conspiracy to Distribute a Controlled Substance, have been committed by Myra Boleche MINKS and Quinten Giovanni MOODY. There is also probable cause to believe that things described in Attachment B will constitute evidence of these criminal violations.

## II.        PROBABLE CAUSE

5.  The affidavit submitted in support of search warrant number 2:21-SW-472-JPD is hereby incorporated by reference and attached to this affidavit.

### A.    Overview of Investigation

6.  This investigation involves a series of episodes during which MINKS, MOODY, and others have impersonated federal law enforcement officers. The first known impersonation episode occurred in April 2020. MINKS posed as an Assistant United States Attorney and called an actual Assistant U.S. Attorney for the Northern District of Georgia in an attempt to obtain information

concerning an ongoing drug investigation that involved MOODY.  MINKS sought to obtain information regarding a male subject (hereinafter, "Subject 1") who admitted to working for MOODY to transport marijuana in the Atlanta metropolitan area (hereinafter, the "Atlanta Impersonation").

7.     The second known impersonation episode occurred during the Summer of 2020, when MINKS posed as an FBI agent and attempted to dissuade putative buyers from purchasing a piece of real property in Newcastle, California (hereinafter, the "Newcastle Impersonation").  During the same time period, MINKS and MOODY met with the putative sellers and expressed an interest in purchasing the property.  This impersonation episode is described in detail in the incorporated affidavit supporting search warrant number 2:21-SW-472-JPD.

8.     The third known impersonation episode occurred in April of 2020, when MINKS posed as a Drug Enforcement Agency (DEA) agent and contacted the California Highway Patrol (CHP) to obtain information regarding the investigation of a fatal shooting of a male victim (hereinafter, "Victim 1") on Interstate 880 in the Northern District of California (hereinafter, the "Freeway Impersonation").

9.     The fourth known impersonation episode occurred in May 2021, when MINKS posed as a representative from the "DOJ FBI Virginia Field Office," gave a badge number, and presented AT&T with a fraudulent federal court order authorizing the disclosure of subscriber information and historical call detail records with cell site information.  Further, MINKS requested precise location data (also known as "ping data") for a cell phone that belonged to a male who was the target of a shooting (hereinafter, "Victim 2") at the Grand Hyatt at San Francisco Airport on May 3, 2021 (hereinafter, the "SFO Impersonation").  AT&T personnel gave MINKS the subscriber data, call detail records, and real-time location data as a result of this scheme.  MOODY also contacted AT&T personnel in connection with this impersonation scheme.

**B.     MINKS Participated in the Freeway Impersonation.**

10.     On or about April 13, 2020, a CHP detective received a phone call while he was at an Oakland area hospital investigating a shooting that occurred on Interstate 880.  The caller identified herself as a DEA agent and inquired about the shooting, including asking whether Victim 1 was at the hospital.  The caller went on to say that approximately $350,000 was located in Victim 1's vehicle.  The detective asked the caller for a call back number which she provided.

11.    Actual DEA agents conducted a follow-up investigation regarding the telephone number that the female caller provided to CHP on April 13, 2020.  The service provider for the phone number was Pinger.  Pinger is a company that provides voice over IP telephone services.  DEA agents identified the IP address used to complete the call to CHP on April 13, 2020.  The internet service provider was AT&T U-verse, with a service address of 2260 Abbeyhill Road, Lincoln, California and an email address on the account beginning with "myraandjj@".

12.    At the time, MINKS had been ordered by a court to wear a location-monitoring ankle bracelet.  Placer County Probation Department provided the location data from MINKS' ankle bracelet, which indicated that she lived at the 2260 Abbeyhill Road residence in April of 2020, including at the time of the call to CHP on April 13, 2020.

13.    On or about May 12, 2020, DEA agents conducted physical surveillance at 2260 Abbeyhill Road in Lincoln, California.  They observed an Asian female resembling MINKS exiting a dark colored Range Rover.  The vehicle was registered to Moody.  I have since observed MINKS driving that same vehicle, *i.e.*, the Range Rover (identified in Attachment A-4), and parking it at her current residence, the Glenwood Springs Way Residence (identified in Attachment A-1).

### C.    MINKS and MOODY Participated in the SFO Impersonation.

14.    On or about May 17, 2021, AT&T received a fraudulent court order requesting subscriber information and historical call detail records with cell site information covering the period May 1, 2021 to May 17, 2021 for a phone number associated with Victim 2.  Subsequently, AT&T received another fraudulent court order for a second phone number associated with Victim 2.  This fraudulent court ordered purported to require production of historical call detail records and cell site information covering the period May 1, 2021 to May 24, 2021.  Related to each of these fraudulent orders, MINKS provided AT&T with telephone number (424) 438-4744 (hereinafter, "x4744") as her "call back number."  AT&T personnel confirmed that they did in fact speak with the female caller—which law enforcement has identified as MINKS—by calling or receiving a call from x4744.

15.    I listened to a recording of a phone call on May 23, 2021, involving the female caller and an AT&T employee.  The female caller requested information regarding a phone number associated with Victim 2.  I have listened to a known recording of MINKS, and after comparing the voice of the

EXHIBIT 1 - Prior SW 2:21-SW-0535-CKD

1  female caller in the May 23 call to AT&T to that known recording of MINKS, I believe the female caller

2  was in fact MINKS.

3     16.    I also listened to recordings of three phone calls on June 2, 2021, which involved a male

4  caller and AT&T employees.  The male caller requested information regarding a phone number

5  associated with Victim 2.  I have listened to a known recording of Moody, and after comparing the voice

6  of the male caller in the June 2 calls to that known recording of Moody, I believe the male caller was in

7  fact Moody.

8     **D.    MINKS drives the Range Rover, which is registered to MOODY.**

9     17.    On June 19, 2021, a female matching MINKS's description was observed driving the

10  Range Rover, California license plate 8HKR537, which is registered to MOODY, to and from the 5113

11  Glenwood Springs Way Residence and accessing the residence through the garage door.

12     **E.    MOODY drives the Lexus.**

13     18.    On June 2, 2021, the Honorable Jeremy D. Peterson, authorized law enforcement to begin

14  gathering geolocation data for Moody's cellular telephone, 415-539-5117, for a period of thirty days

15  ("Moody's Phone").  *See* incorporated search warrant number 2:21-SW-0472-JDP.

16     19.    On June 4, 2021, the FBI began receiving location information for Moody's Phone.  At

17  the time, geolocation information showed that Moody's Phone was located in Las Vegas, Nevada.  Later

18  that evening, Moody's Phone was located near the Las Vegas Airport and then subsequently near the

19  Burbank Airport.  On June 7, 2021, Moody's Phone returned to the Burbank Airport before being

20  located near the Oakland Airport.

21     20.    On June 10, 2021, geolocation information for Moody's Phone showed that it travelled

22  from the Northern District of California to the Eastern District of California.  A law enforcement officer

23  conducted surveillance in an attempt to locate MOODY.  During the late morning of June 10,

24  geolocation information for Moody's Phone showed it be in the vicinity of the Cracker Barrel restaurant

25  located at 4630 Sierra College Boulevard in Rocklin, California.  A law enforcement officer went into

26  the Cracker Barrel restaurant and positively identified MOODY.  Subsequently, a law enforcement

27  officer observed MOODY leave the Cracker Barrel restaurant and get into a white Lexus sedan with

28  California license plate 8NVF834, *i.e.*, the Lexus (identified in Attachment A-5).  Moody was the driver

and sole occupant of the car.

21.     According to the California Department of Motor Vehicles, the Lexus is registered to MOODY.

22.     A law enforcement officer conducted surveillance of MOODY after he left the Cracker Barrel restaurant.  Geolocation data showed Moody's Phone's movements were consistent with MOODY being in possession of Moody's Phone.  In addition, the investigator observed that MOODY appeared to engage in counter-surveillance driving techniques.

23.     On June 14, 2021, geolocation information for Moody's Phone showed that it travelled from the Northern District of California to the Eastern District of California and stopped at the Glenwood Springs Way Residence.  Law enforcement surveillance observed MOODY driving the Lexus in the approximate location where the geolocation information indicated Moody's phone was located.  MOODY parked the Lexus in the driveway of Glenwood Springs Way Residence.

**F.     MINKS drives the Mercedes, which is registered to MINKS.**

24.     On June 14, 2021, MINKS was observed driving the Mercedes, California license plate 8UHF914, out of the garage at Glenwood Springs Way Residence.  According to the California DMV, the Mercedes is registered to Myra MINKS or Jessica Tang.

### III.     TECHNICAL TERMS

25.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  Typically, an IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Other forms of IP addresses, such as IPv6, may express IP addresses differently.  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.  Storage medium: A storage medium is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## IV.   COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

26.   As described above and in Attachment B, this application seeks permission to search for records that might be found in the locations identified in Attachments A-1 though A-6, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

27.   *Probable cause.*  I submit that if a computer or storage medium is found in the locations identified in Attachments A-1 through A-6, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a

computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

28.   *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the locations identified in Attachments A-1 through A-6 because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file

systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.   As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contains information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection

logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.   I know that when an individual uses a computer or electronic device to communicate over a voice over IP telephone account or place a telephone call impersonating a federal agent or employee, the individual's computer or electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The computer or electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The computer or electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that a computer or electronic device is used to commit a crime of this type may contain: data that is evidence of how the computer or electronic device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

29.     *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant.  In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

a.   The time required for an examination.  As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that

information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

30.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

31.     Because MINKS shares the Glenwood Springs Way Residence with a male child who is approximately 8 to 10 years old, it is possible that the Glenwood Springs Way Residence will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

EXHIBIT 1 - Prior SW 2:21-SW-0525-CKD

## V.   **CONCLUSION**

32.     I submit that this affidavit supports probable cause for a warrant to search the locations identified in Attachments A-1 through A-6 and seize the items described in Attachment B.

## VI.   **REQUEST FOR SEALING**

33.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

/s/
John W. Ogden
Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically on:                     June 21, 2021

The Honorable Carolyn K. Delaney
United States Magistrate Judge

/s/ Brian A. Fogerty
Approved as to form by:
Assistant U.S. Attorney Brian A. Fogerty

AFFIDAVIT                                     13

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

**Jun 03, 2021**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of          )
                                        )
THE CELLULAR TELEPHONE ASSIGNED         )
CALL NUMBER (415) 539-5117              )
                                        )
                                        )

Case No.    2:21-sw-0472 JDP

# SEALED

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 912; 21 U.S.C. § 846 | False Impersonation of a Federal Agent; Conspiracy to Distribute Marijuana |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☑ Delayed notice   30   days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ John Ogden

*Applicant's  signature*

John W. Ogden, FBI Special Agent

*Printed name and title*

Sworn to telephonically, pursuant to Fed. R. Crim. P. 4.1.

Date:    June 3, 2021

*Judge's signature*

City and state:   Sacramento, California

Jeremy D. Peterson, U.S. Magistrate Judge

*Printed name and title*

PHILLIP A. TALBERT
Acting United States Attorney
BRIAN A. FOGERTY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of: | CASE NO. |
| THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (415) 539-5117 | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO OBTAIN PRECISE LOCATION DATA FROM A CELLULAR TELEPHONE |
| | **UNDER SEAL** |

I, John W. Ogden, being first duly sworn, hereby depose and state as follows:

## I.      **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (415) 539-5117 (the "Target Cell Phone"), whose service provider is AT&T (doing business as Cingular Wireless), a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is

1

designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127.  The requested

warrant therefore includes all the information required to be included in an order pursuant to that statute.

See 18 U.S.C. § 3123(b)(1).

3.      I am a Special Agent with the Federal Bureau of Investigation, and have been since 2009.

I am currently assigned to Sacramento Division, where I primarily investigate fugitive and violent crime

matters.  Through the course of my career as an FBI Special Agent, I have received training and gained

field experience analyzing cellular telephone data, to include location data, to further criminal

investigations.  I am a federal law enforcement officer authorized to request a search warrant.

4.      The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents, investigators, and witnesses.  This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrant and does not set

forth all of my knowledge about this matter.

5.       Based on the facts set forth in this affidavit, there is probable cause to believe that

violations of 18 U.S.C. § 912, False Impersonation of a Federal Agent, have been committed, are being

committed, and will be committed by Quinten MOODY, Myra Minks, Ryan M. Grimes, and Lisa La

Torre.  There is also probable cause to believe that violations of 21 U.S.C. § 846, Conspiracy to

Distribute Marijuana, have been committed, are being committed, and will be committed by MOODY

and Minks.  There is also probable cause to believe that the location information described in

Attachment B will constitute evidence of these criminal violations.

6.      The court has jurisdiction to issue the proposed warrant because it is a "court of

competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the

United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## II.      PROBABLE CAUSE

### A.      Overview of Investigation

7.      This investigation arises from reports that individuals impersonated FBI agents in order

to persuade putative home buyers to cancel a contract for the purchase of real property in New Castle,

California.  The putative buyers, Anthony Lichtl and Whitney Lichtl (collectively, the "Lichtls"), agreed

to purchase a home belonging to Grimes and La Torre.  During the investigation, evidence was

1   identified indicating that Grimes is subject to an Internal Revenue Service (IRS) tax lien.  After entering

2   the real estate contract with the Lichtls, Grimes and La Torre sought to cancel the contract.  MOODY

3   and Minks were also prospective buyers of the Newcastle property.

8.   Evidence collected during the investigation indicates that Minks impersonated an FBI

5   agent when communicating with the Lichtls and their representatives during telephone calls and by text

6   message.  She falsely told the prospective buyers of a property that the sellers (Grimes and La Torre)

7   were under investigation by the FBI.  Further, she falsely warned that if the buyers completed the

8   purchase, the FBI would seize the property from them.  One of the impersonation calls was made by a

9   male caller.  The evidence has not yet confirmed that MOODY was the male voice on this call.

10  However, MOODY traveled to the Newcastle property with Minks and presented himself as an

11  interested buyer along with Minks.  The prospective buyers who were the target of the false

12  impersonation scheme (the Lichtls) ultimately cancelled the purchase contract for the property.

9.   Further investigation also revealed that MOODY is a member of a drug trafficking

14  organization that operates in Northern California and the Atlanta, Georgia metropolitan area

15  (hereinafter, the "Moody DTO").  Law enforcement has collected evidence indicating that Minks has a

16  pattern of impersonating law enforcement officials in order to obtain information regarding

17  investigations concerning the drug trafficking activities and/or acts of violence by Moody DTO

18  members.

10.   This warrant would authorize the collection of location information associated with

20  MOODY cell phone (i.e., the Target Cell Phone).

B.   **Minks Admitted to Participating in the Distribution of Marijuana.**

11.   In 2019, Minks was interviewed by investigators from the Placer County Sheriff's Office.

23  During that interview, Minks indicated that she makes money through the sale of marijuana.

C.   **In April 2020, Minks Impersonated an Assistant U.S. Attorney to Obtain**

25       **Information about an Investigation Concerning the Moody DTO.**

12.   On or about April 27, 2020, a female called the United States Attorney's Office for the

27  Northern District of Georgia.  The female caller claimed to be Assistant U.S. Attorney Cynthia Lee from

28  San Francisco.  When the female caller spoke to an Assistant U.S. Attorney in the Northern District of

Georgia, she inquired about an ongoing drug trafficking investigation including MOODY.  Further investigation revealed that Minks was the person who called the Northern District of Georgia Assistant U.S. Attorney on April 27, 2020.

**D.      MOODY and Minks' Impersonation Scheme Regarding the Newcastle Property**

**1.      The Real Estate Contract.**

13.      On or about July 17, 2020, the Lichtls entered a contract to purchase the real property located at 9211 Rock Springs Road in Newcastle, California.  The seller of the property listed on the contract was La Torre.  The purchase price was $1,650,000.

14.      On or about July 18, 2020, Jason Raymond, the real estate agent representing the Lichtls, received communication from Leslie Reed, the real estate agent representing Grimes and La Torre, indicating that Grimes and La Torre wanted to cancel the sale contract.  Reed indicated that Grimes and La Torre wanted to cancel the contract because there was a missing signature on the original purchase contract.  Grimes and La Torre wished to cancel the contract despite the existence of a fully executed counter offer.  The purchase agreement was not cancelled at that time, however, it was cancelled at a later date after the alleged impersonation, which is described below.

**2.      Grimes and La Torre Attempted to Change the Title to the Property.**

15.      On or about July 20, 2020, the Lichtls became aware that the sellers, Grimes and La Torre, wanted to change the title for the 9211 Rock Springs property.  Title was held by the Grimes Family Trust.  Grimes and La Torre sought to remove the Grimes Family Trust and list La Torre as the sole owner.  Grimes told Anthony Lichtl that Grimes and La Torre were working with an attorney to change the title through a different title company that was not involved in the sale transaction.  Grimes discussed a desire to delay the sale of the 9211 Rock Springs Road property until December.

**3.      Telephone Call to Raymond from Purported FBI Agent.**

16.      On or about July 24, 2020, Raymond, the Lichtls' real estate agent, received a telephone call from a blocked phone number.  The voice of the caller was described as a female voice.  The caller identified herself as Special Agent Amanda Sanchez Greenz, badge number 564295.  Greenz said that she worked out of the San Francisco and Sacramento FBI Field Offices.

17.      Greenz said she was notified that Raymond's clients made a recent deposit into the

4

escrow account associated with the purchase of 9211 Rock Springs Road.  Purported FBI agent Greenz went on to warn Raymond that Grimes, the seller of the property, was under investigation by the FBI for illicit gains and what she described as tax "invasion."  Greenz indicated that Grimes had a history of buying and selling property without paying taxes and recently changed the entity listed on the title for 9211 Rock Springs Road to the Grimes Family Trust.  Greenz went on to say that if the buyers purchased the 9211 Rock Springs Road property, the property would certainly be seized from them.  Greenz also said that another buyer had deposited funds into the sellers' account.  Greenz did not think the other buyer had made an offer.  When asked about the identity of the other buyer, Greenz said the buyer was a marijuana cultivator who was licensed and above board.

18.     Through this investigation, it was confirmed that the Lichtls did in fact deposit funds into the escrow account on or about July 21, 2020.

19.     Raymond questioned Greenz further about her identity.  Purported FBI agent Greenz responded by calling Raymond on a separate telephone line that had a 415-area code.  Purported FBI agent Greenz claimed that the 415 number was an alternate office number.  Greenz also told Raymond that impersonating an FBI agent was a federal offense.

20.     During the call, Raymond added Anthony Lichtl to the telephone call with purported FBI agent Greenz.  When Anthony Lichtl joined the call, Greenz reiterated much of what she had told Raymond.  Greenz told Anthony Lichtl that she knew he had young kids and a family.  She said she was letting him know about all of this because she is not the "typical asshole agent."  Anthony Lichtl asked Greenz why she had waited so long to inform them of the investigation.  Greenz said we—referring to the FBI—only get notified once escrow is opened.  Greenz said she had done surveillance of the 9211 Rock Springs Road property.  Anthony Lichtl expressed concern because his home in Carlsbad, California was already under contact to be sold.  Greenz said the FBI would help cancel the sale of Anthony Litchtl's Carlsbad home.  Greenz asked for the Carlsbad property address and real estate agent's name and phone number.  Anthony Lichtl subsequently provided the Carlsbad property address, his real estate agent's name, Colin Robertson, and Robertson's telephone number.  Greenz told Anthony Lichtl to cancel the purchase of the 9211 Rock Springs Road property, not to tell the sellers about the investigation and to remove himself from the situation.  During the phone call, Anthony Lichtl received

5

a text message from La Torre asking Anthony Lichtl to call him.  La Torre indicated that she had an update.

### 4.    Amanda Sanchez Greenz is not an FBI Agent.

21.    As part of this investigation, I reviewed records to determine whether there was an FBI agent named Amanda Sanchez Greenz and whether there was then an ongoing FBI investigation regarding Grimes and La Torre selling and purchasing property without paying taxes.  I found no records indicating that there is a person named Amanda Sanchez Greenz who serves as an FBI Special Agent.  Nor were there any records indicating that there was then an FBI investigation regarding Grimes and La Torre selling and purchasing property without paying taxes.

### 5.    Anthony Lichtl Received Text Messages from (202) 809-7438.

22.    On or about July 24, 2020, following the telephone call involving purported FBI agent Greenz and real estate agent Raymond, Anthony Lichtl received text messages from (202) 809-7438 (hereinafter "x7438").  Set forth below are the text messages from x7438:

> x7438:  This is Special Agent Amanda Sanchez Greenz.  I am providing you with my direct contact information should anything come up with the property previously discussed.  Again, on behalf of myself and this pending investigation, we are truly sorry that you were affected.  I will have been trying to talk to my colleagues on how to handle this situation with respect with your current home sale.  I will follow up with your agent within the next hour.  I have to speak to a supervisor with respect to this.  I will do everything in my power to assist you.

> ANTHONY LICHTL:  Thank you Ms. Greenz.  Do you have the contact info for the IRS Agent in charge who is pursuing the tax invasion matter?

> x7438:  Tax invasion isn't handling by an IRS agent.  Criminal matters are handled with the United States Attorneys office.  An IRS agent is only involved with auditing matters.  I reached out to your realtor.  No response.

> ANTHONY LICHTL:  Ok so only the USAO handles tax invasion matters?  Just curious to know how much trouble he's in.  Sounds like deep doo doo

> x7438:  [an attached image with the following text visible] to evade or defeat tax U.S. Code Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties, provided by law, be guilty of a felony and, upon conviction thereof, shall be fined no more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both

ANTHONY LICHTL:  I thought it was tax "invasion" or is it tax evasion?

x7438:  The USAO office handles criminal matters.  Some tax matters are handled, depending on matter by the irs.  All tax issues are not criminal.  It is tax evasion.

ANTHONY LICHTL:  So what should I do?  I'm so nervous

x7438:  I'm quite confused.  I can not legally advise you.  I am not an Attorney.  If you want to seek representation you can do so but this matter doesn't effect you.  In the sense of an investigation.  Your realtor has not responded.  I indicated I would assist you as much as possible in informing the representatives on your end the legal circumstances surrounding the matters.  Whatever other concerns you have please seek counsel if you are concerned about personal issues.  You are not being investigated at this point.

ANTHONY LICHTL:  I thought you advised me to notify the Sellers that I could not secure funding and to try and cancel the agreement that way?  Great…now we're both confused!  Maybe we should both get on the phone with the USAO?

x7438:  Sir, What you have been advised was just that.  18 U.S.C. § 1503 defines "obstruction of justice" as an act that "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice."  Search Results Featured snippet from the web Whoever willfully endeavors by means of bribery to obstruct, delay or prevent the communication of information relating to a violation of any criminal statue of the United States by any person to a criminal investigator shall be fined under this title, or imprisoned not more than five years, or both.  If you want to discuss with an attorney you are more than welcome to do that.  The risk is yours to take.  It was ethical and morally right to keep you informed.

### 6.        Real Estate Agent Raymond Received a Text Message from x7438.

23.        On or about July 24, 2020, after the phone call described above, real estate agent Raymond received the following text message from x7438:

Mr. Raymond, This is SA Amanda Greenz, I am providing you my direct contact information should you need it for any purposes.  Again, truly sorry to you and your clients were affected by this.  Update; I am following up with the realtors involved on the sale of his property to see what can be done.  Be well. Take care

### 7.        Additional Communications with La Torre and Grimes.

24.        On or about July 24, 2020, Anthony Lichtl called La Torre in response to her request, described above, which she sent via text message.  La Torre told Anthony Lichtl that they were close to

resolving the title issue.

25.     On or about July 24, 2020, Anthony Lichtl also called Grimes to inform him of the call he received from purported FBI agent Greenz.  Grimes said he did not know anything about the investigation.  Grimes said purported FBI agent Greenz could have been anyone and that there are a lot of crazy people out there.  Anthony Lichtl asked Grimes if he was concerned about someone showing up to the 9211 Rock Springs Road property.  Grimes responded that he was not concerned and said, "I have plenty of guns."  Anthony Lichtl asked Grimes about the other buyer mentioned by Greenz.  Grimes said there was an interested buyer who ran a marijuana dispensary and who claimed to have the ability to make an all cash offer.  That offer never materialized and he had not heard from that buyer in weeks.

### 8.     Grimes Indicated that He Would Not Sell If the Sale Was Subject to IRS Liens.

26.     On or about July 31, 2020, real estate agent Raymond was present at the 9211 Rock Springs Road property while a home inspection was being completed.  Grimes was also present.  Grimes told Raymond that he was previously forced out of a house he owned as a result of foreclosure.  Grimes told Raymond that that property was located in Clear Lake, California and the property was valued at more than $1,000,000.  Grimes also told Raymond that he destroyed that house before he left and the bank sold the house for less than $200,000.  Grimes went on to describe financial trouble he had experienced beginning around 2010.  Grimes said that if he had to pay his tax liens, he may as well not sell the 9211 Rock Springs Road property.  Grimes said he would not leave the house and would not be forced out without making a problem.  He also said he would do anything in his power not to let the transaction close.

### 9.     Grimes told Anthony Lichtl that Grimes was Subject to $200,000 Tax Lien

27.     On or about August 13, 2020, Anthony Lichtl spoke with Grimes on the telephone.  Grimes told Anthony Lichtl that they needed to cancel the current purchase agreement.  Grimes said they needed a new agreement so they could change the title.  Grimes went on to say that he had been through bankruptcy a couple times but that the most recent bankruptcy had been resolved in March of 2020.  Grimes said he owed about $200,000 in taxes which had all been paid to the IRS, but had not been recorded yet.  Anthony Lichtl responded to Grimes and said there was no reason to cancel the

1  agreement.  Anthony Lichtl told Grimes that if the tax payment had been made, things would get sorted

2  out with the IRS.

3  28.  On or about August 13, 2020, a few minutes after Anthony Lichtl spoke with Grimes, La

4  Torre called Whitney Lichtl and provided information similar to the information that Grimes shared with

5  Anthony Lichtl, which is described in the preceding paragraph.

6  **10.  Anthony Lichtl Attempted to Contact Purported FBI Agent Greenz**

7  29.  On or about August 13, 2020 and August 14, 2020, Anthony Lichtl attempted to contact

8  Greenz by calling and text messaging x7438.  Anthony Lichtl was able to send text messages to the

9  x7438, but Anthony Lichtl believed x7438 line may not have been in service at the time.  Anthony

10  Lichtl did not receive a response from Greenz.

11  **11.  Telephone Call from Purported San Diego Division FBI Agent.**

12  30.  On or about August 14, 2020, the Lichtls received a telephone call from telephone

13  number (760) 929-0811 (hereinafter "x0811").  The phone number x0811 is assigned to an FBI office in

14  Carlsbad, California.  The voice of the caller was described as a male sounding voice.  The caller

15  identified himself as David Gonzalez or David Guttierez, (hereafter "David").  David claimed to be an

16  agent in the Carlsbad FBI office.  David refused to provide a badge number.  David said he could meet

17  Anthony Lichtl at the FBI office in Carlsbad.  Anthony Lichtl said he was in Lake Havasu and asked

18  David if the FBI had an office there.  David said the FBI did not have an office in Lake Havasu.

19  Anthony Lichtl told David he knew he was a fake because there was an FBI office in Lake Havasu.

20  31.  Anthony Lichtl then called the FBI office in Carlsbad.  He did this using another phone.

21  When Anthony Lichtl was connected with the FBI office in Carlsbad, he asked if David was an Agent in

22  that office.  The receptionist at the Carlsbad FBI office said David was not an Agent.  Anthony Lichtl

23  then put the two phones together and the FBI receptionist told David to stop harassing the Lichtls.

24  32.  After Anthony Lichtl ended the call with the FBI's Carlsbad office, Anthony Lichtl again

25  told David that he knew he was fake and asked him who he was and what he wanted.  David responded,

26  "You'll find out."

27

28

**12.   The Cell Phone Assigned x7438 Was Purchased at a Walmart in Roseville, California.**

33.   On September 18, 2020, I reviewed records received from TracFone.  TracFone is a mobile virtual network operator (MVNO) that partners with large cell phone service providers or carriers like Verizon Wireless.  The records from TracFone included subscriber information for the telephone number x7438.  Verizon was identified as the cell phone service provider or carrier.  The phone service was activated on May 19, 2020, and had an end date of September 22, 2020.

34.   The TracFone records indicate that the device to which x7438 was assigned had a device serial number, also known as the IMEI, of 354916095765250.[1]  No customer name is listed on the account.  The customer city is listed as Sacramento, the email address is listed as wildcard@yahoo.com, and phone and address were both listed as 1378288977.  An open source search of telephone number 1378288977 failed to identify any subscriber records.

35.   The TracFone records also include information regarding where the device was purchased.  The device was purchased at a Walmart in Roseville, California.

**13.   Walmart Records Indicate that the Device Assigned x7438 is an Apple iPhone 7.**

36.   On September 18, 2020, I received purchase records from Walmart, a retail supermarket chain, in Roseville, California.  The records are consistent with the TracFone purchase records described above.  The Walmart records indicate that the device assigned x7438 was an Apple iPhone 7.  The Walmart records indicate that the device was purchased with cash on May 19, 2020 at approximately 3:52 p.m.  The purchase was made at the Walmart store located at 900 Pleasant Grove Boulevard in Roseville, California.

**14.   Apple and Comcast Records for the Device Assigned x7438 Link it to Minks.**

37.   Apple Inc. provided records regarding the Apple iPhone 7 assigned x7438.  Apple iTunes subscriber data for the that device include an email address of janedoughho@icloud.com that is associated with two names and addresses.  The first name is "What Dafuck" at 1000 Whillshire Blvd,

---

[1] This device, which is assigned IMEI 354916095765250, is a device that has been assigned many different telephone numbers during the relevant time period.

Beverly Hills, CA. The second name was "Myra M" at 747 Eagle Ave, Alameda, CA. The Apple records also include the following data regarding the Apple iPhone 7 that was assigned x7438:

- Between the dates July 11, 2020 and August 17, 2020, iTunes updates for the device were made in the name of "Myra M" with address 747 Eagle Ave, Alameda, CA.
- Between the dates July 13, 2020 and July 29, 2020, iTunes transactions were made in the name of "Myra M" with address 747 Eagle Ave, Alameda, CA.
- Between the dates May 19, 2020 and August 17, 2020, the device made connections to Apple iTunes from IP address 98.208.88.211. Further investigation revealed that this IP address was assigned to the Internet service provider Comcast. An open source search revealed that 747 Eagle Ave, Alameda, CA is as an address that is linked to Minks.

38. Comcast provided subscriber information for the account associated with IP address 98.208.88.211. The physical address for service was 5113 Glenwood Springs Way in Roseville, California. The subscriber name was Dennise Prather and the service was active between May 2020 and October 2020, when FBI received the Comcast records.

**15. Utility Records for 5113 Glenwood Springs Way and DMV Records link Minks to the Property.**

39. On October 8, 2020, I reviewed electric, water and solid waste service/utility records for the 5113 Glenwood Springs Way property. The records indicate that Jessica Tang has been the property resident since July 1, 2020. However, the records list a mailing address of 2173 Viola Way, Roseville, California.

40. On October 8, 2020, I reviewed California Department of Motor Vehicles ("DMV") registered vehicle records for Jessica Tang. Through a review of those records, I identified a record indicating that there is a vehicle that is listed as registered to Jessica Tang or Myra Minks at 2532 Ronald McNair Way in Sacramento, California. The registration for that vehicle is valid from June 30,

2020 to June 30, 2022.

**E.    Placer County Probation Department Location Data Links Minks to the device assigned x7438, the 5113 Glenwood Springs Property, and Grimes' and La Torre's property.**

41.    In October 2020, I reviewed location data from an ankle monitor that a Placer County Superior Court Judge ordered Minks to wear.  The Placer County Probation Department provided the data.   The location data reveals that on May 19, 2020, Minks was at or near the Walmart store located at 900 Pleasant Grove Avenue in Roseville, California from approximately 3:06 p.m. to 3:59 p.m.  As described above, the Apple iPhone assigned x7438 was purchased at that Walmart store on May 19, 2020 at 3:52 p.m.

42.    Placer County location data also indicates that since approximately May 6, 2020, Minks has frequently been present at the 5113 Glenwood Springs Way property, with a pattern of overnight stays.

43.    Placer County location data also indicates that Minks was at 9211 Rock Springs Road, Newcastle, California—Grimes' and La Torre's property—on June 29, 2020, June 30, 2020, July 1, 2020, July 14, 2020, September 28, 2020, and November 7, 2020.

44.    On October 16, 2020, I observed Minks drive a gray Range Rover with California license plate 8HKR537 out of the garage at 5113 Glenwood Springs Way property.

**F.    MOODY and Minks Have Had an Ongoing Relationship Since Their Participation in the Newcastle Impersonation Scheme.**

45.    On multiple occasions, I have observed vehicles registered to MOODY parked at the 5113 Glenwood Springs Way residence.  Additionally, on January 15, 2021, I saw an African American male who resembled MOODY exit the 5113 Glenwood Springs Way residence and enter a Dodge SRT with temporary license plate number S0523922.  On January 18, 2021, MOODY was stopped by the California Highway Patrol (CHP) in that same vehicle.  MOODY told the CHP officer the vehicle belonged to him but he had not registered it in California yet.

46.    A Roseville Police Department call for service log dated December 29, 2020 indicates that officers were dispatched to the 5113 Glenwood Springs Way residence to do a welfare check on

1  Minks.  The report indicates that there were reported concerns about a man Minks was dating, who was

2  identified as "Quintin Moody."

3       47.     On May 27, 2021, I observed a white Lexus sedan that was registered to MOODY visit

4  the 5113 Glenwood Springs Way residence.  The vehicle was driven by an African American male who

5  resembled MOODY.

6       **G.**     **Minks Impersonated a Law Enforcement Official to Obtain Information Regarding**

7              **a May 2021 Shooting Linked to the MOODY DTO.**

8       48.     On or about May 3, 2021, there was a shooting at the Grand Hyatt Hotel near the San

9  Francisco International Airport.  Shortly after the incident, a female called a San Mateo County Sheriff's

10  Department dispatcher claiming to be with the California Highway Patrol.  The female caller inquired

11  about the shooting.  Officers and investigators later listened to a recording of the dispatch call and

12  confirmed that the voice of the female caller was consistent with Minks.  Investigators confirmed that a

13  person named Shawn Robinson was present at the time of the May 3, 2021 shooting.  Shawn Robinson

14  is known to law enforcement as a drug trafficker and a member of a drug trafficking organization that is

15  a rival to the Moody DTO.

16       49.     Also after the May 3, 2021 shooting, a female called AT&T claiming to be with the

17  Department of Justice.  The female caller requested location information for Shawn Robinson's phone.

18  Investigators later listened to a recording of this call with AT&T and confirmed the voice to be

19  consistent with Minks' voice.  The female caller used the same number to call the San Mateo County

20  Sheriff's Department and AT&T.

21       50.     Also after the May 3, 2021 shooting, investigators learned that one of the vehicles

22  involved in the shooting was rented using a service called Getaround.  The person who rented the

23  vehicle used a fictious name.  Location information embedded in the digital photo used to return the

24  vehicle to Getaround indicated that the photo was taken in the vicinity of Roseville, California.  Later in

25  May 2021, another Getaround vehicle was reserved using the same fictious name.  Subsequently, a

26  female called Getaround customer service because the car she had reserved would not start.

27  Investigators listened to a recording of that call and confirmed the voice to be consistent with Minks'

28  voice.

**H.**     **The Target Cell Phone Belongs to MOODY.**

51.     On June 1, 2021, I conducted an open-source search for records regarding the Target Cell Phone.  Those open source records indicated that MOODY is the subscriber for the Target Cell phone.

52.     On June 2, 2021, I confirmed that MOODY has listed the Target Cell Phone as his telephone number.  On that day, I contacted a representative of U.S. Bank who confirmed that MOODY is an account holder and the Target Cell Phone is the telephone number associated with his bank account.

53.     In my training and experience, I have learned that AT&T (doing business as Cingular Wireless) is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

54.     Based on my training and experience, I know that AT&T (doing business as Cingular Wireless) can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T (doing business as Cingular Wireless)'s network or with such other reference points as may be reasonably available.

55.      Based on my training and experience, I know that AT&T (doing business as Cingular Wireless) can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically

determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as AT&T (doing business as Cingular Wireless) typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### III.    AUTHORIZATION REQUEST

56.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

57.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).

58.    I further request that the Court direct AT&T (doing business as Cingular Wireless) to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T (doing business as Cingular Wireless).  I also request that the Court direct AT&T (doing business as Cingular Wireless) to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B

unobtrusively and with a minimum of interference with AT&T (doing business as Cingular Wireless)'s services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T (doing business as Cingular Wireless)'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T (doing business as Cingular Wireless) for reasonable expenses incurred in furnishing such facilities or assistance.

59. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

60. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/ John Ogden

John W. Ogden
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to telephonically on:

June 3, 2021

Hon. Jeremy D. Peterson
United States Magistrate Judge

16

/s/ Brian A. Fogerty
_____
Approved as to form by:
Assistant U.S. Attorney Brian A. Fogerty

In addition, to ensure technical compliance with 18 U.S.C. §§ 3121-3127, I also request that this warrant shall also function as a pen register order.  I thus certify that the information, under oath, that likely to be obtained is relevant to an ongoing criminal investigation conducted by the Federal Bureau of Investigation, based on the agent's affidavit herein.  *See* 18 U.S.C. §§ 3122(b), 3123(b).

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (415) 539-5117 | )<br>)<br>)<br>)<br>)<br>) |

Case No.   2:21-sw-0472 JDP

# SEALED

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**
This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A).  Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____June 17, 2021_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☑   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑   for ___30___ days *(not to exceed 30)*   ☐   until, the facts justifying, the later specific date of _____.

Date and time issued:   _____June 3, 2021 at 4:00 p.m._____

*Judge's signature*

City and state:   _____Sacramento, California_____   _____Jeremy D. Peterson, U.S. Magistrate Judge_____
*Printed name and title*

EXHIBIT 1 - Prior SW 2:21-SW-0525-CKD

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                                                            Date

## <u>ATTACHMENT A</u>

### Property to Be Searched

1. The cellular telephone assigned call number (415) 539-5117 (the "Target Cell Phone"), whose wireless service provider is AT&T (doing business as Cingular Wireless), a company headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T (doing business as Cingular Wireless), including historical call detail records with location data known as NELOS data from March 1, 2021 to present.

## ATTACHMENT B

### Particular Things to be Seized

#### I.      Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T (doing business as Cingular Wireless), AT&T (doing business as Cingular Wireless) is required to disclose the Location Information to the government.  In addition, AT&T (doing business as Cingular Wireless) must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T (doing business as Cingular Wireless)'s services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T (doing business as Cingular Wireless)'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate AT&T (doing business as Cingular Wireless) for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  See 18 U.S.C. § 3103a(b)(2).

#### II.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| 2021 Mercedes coupe with California license plate number 8UHF914 | )    Case No.    2:21-sw-0525 CKD |
| | ) |
| | )    **SEALED** |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the      Eastern      District of        California       
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-6, attached hereto and incorporated by reference.**

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

        **YOU ARE COMMANDED** to execute this warrant on or before     July 5, 2021     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

    ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    June 21, 2021 at 4:31 pm               _Carolyn M. Delaney_
                                                             *Judge's signature*

City and state:    Sacramento, California               Carolyn K. Delaney, U.S. Magistrate Judge
                                                             *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
            Signature of Judge                                   Date

## ATTACHMENT A-6

**Location to be Searched**

A 2021 Mercedes coupe bearing California license plate 8UHF914.  The registered owner of the Mercedes is Daimler Trust with a lease to Jessica Tang or Myra Minks, 2532 Ronald McNair Way, Sacramento, California.  The Mercedes bears VIN # W1K7X5KB8MA0376169.

## ATTACHMENT B

1.        All records relating to violations of 18 U.S.C. § 912, False Impersonation of a Federal Agent, and 21 U.S.C. §§ 846 and 841(a), Conspiracy to Distribute a Controlled Substance, those violations involving Myra Boleche MINKS and/or Quinten Giovanni MOODY:

     a.  Records and information relating to any communication by a person impersonating a law enforcement agent or officer, or by a purported employee of a law enforcement agency, including the Federal Bureau of Investigation, Drug Enforcement Administration, and Department of Justice;

     b.  Records and information relating to the purchase or acquisition of any cell phone between January 1, 2020 and present;

     c.  Records and information relating to the distribution of controlled substances, including the proceeds of the sale of controlled substances and records relating thereto;

     d.  Marijuana;

     e.  Records and information reflecting the purchase, sale, transportation, or transfer of controlled substances, include pay-owe sheets, inventory lists, shipping records, customer lists, and any accounts to which proceeds were transferred;

     f.  False or fraudulent court orders, subpoenas, identification documents, badges, and, credentials;

     g.  Records and information relating to the sale of 9211 Rock Springs Road, Newcastle, California, including information relating to the property owner(s) and any putative buyers;

     h.  Records and information relating to the location of the Myra Boleche MINKS and/or Quinten Giovanni MOODY; and

     i.  Indicia of occupancy, including any correspondence, utility statements, telephone bills, lease agreements, and any other documents that would establish the name(s) of person(s) working, owning, controlling, or residing in the location being searched.

     j.  Any safes found on the premises where any of the items listed in this Attachment might be found as well as any safety deposit box keys, information regarding the location of safety deposit boxes, storage locker keys and information regarding the location of any storage lockers.

2.      Computers or storage media used as a means to commit the violations described above, including False Impersonation of a Federal Agent, in violation of 18 U.S.C. § 912, and/or Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a).

3.      For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.   evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.   evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.   evidence of the lack of such malicious software;

    d.   evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.   evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.   evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    g.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h.   evidence of the times the COMPUTER was used;

    i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.   records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

4. Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

5. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in

addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.   2:22-sw-0035 AC |
| | ) |
| 12801 Fair Oaks Blvd, #523, | ) |
| Citrus Heights, California 95610 | ) |

<span style="color:red">**SEALED**</span>

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____EASTERN_____ District of _____CALIFORNIA_____ *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-1.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____January 28, 2022_____
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge ___any duty magistrate judge___ .
*(name)*

☐  I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*

☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _1/18/2022 @ 11:45 a.m._

City and state:   Sacramento, California _____

**ALLISON CLAIRE**
**UNITED STATES MAGISTRATE JUDGE**

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to, and returned before me this date.

_____   _____
*Signature of Judge*                           *Date*